And our fifth case for argument this morning is United States v. Jamison Krahenbuhl. I hope I pronounced that correctly. Come on up, Mr. Lewis, whenever you're ready. Good morning, your honors. May it please the court. I'm Brian Lewis here on behalf of the appellant, Captain Jamison Krahenbuhl, United States Air Force, retired. This is a criminal appeal from a conviction for disorderly conduct arising from events that took place at the Green Bay VA outpatient clinic. The two issues before the court are whether the First Amendment bars the prosecution of disorderly conduct in this circumstance and whether the statute governing control of the facility at VA clinics, what's required to be shown, whether positive ownership has to be shown, and whether the language in the statute is an exception or a limitation. Both of these are issues which this court has not had to confront until today. And with the court's permission, I'd start with the second leg of the argument and move back to the first on the First Amendment ground, but I'm happy to answer questions regardless. In this court, and really throughout the country, there's not been any reported case law that talks about what proof of ownership is required to invoke the statutory language that the it's probably because this is a 250-dollar ticket. That's true. And just like anyone who has a conviction against them, there are certain attendant prohibitions and certain attendant things and Captain Krahenbuhl chose to take this to trial and the outcome was that 250-dollar ticket. Sure, understood. But that explains why there hasn't been a lot of judicial attention to this statute and to the point of what attention was paid to the statutory text and the regulatory text because as I understand your argument, those two go hand-in-hand here and the question arises as to how this was litigated before the magistrate judge in terms of the pretrial  There have been broad discussions among counsel and the magistrate judge about what the elements of the regulatory offense are. I know that this became a subject of the post-conviction litigation. I don't know that it was the subject of pretrial litigation. Your Honor, when the pretrial litigation took place, this wasn't as hotly litigated as it became. It did arise at the trial at the motion for directed verdict and I did reference that and that occurs around page 182, 183 of the transcript and essentially the magistrate took a guess and said that the language of the statute created an exception and not a limitation with which of course we disagreed and that's how this issue arose. Mr. Lewis, following up on Chief Judge Sykes' question, does it matter that in Section 901 or let's start with the regulation, does it matter that in 38 CFR Section 1.218, the phrase and not under the charge and control of the General Service Administration is in parentheses whereas in the statute, it's not? Your Honor, I believe that the correct answer is the regulation was an essential restating of the statutory requirements and in that case, the statutory requirement would govern over the regulatory requirement. The parentheses there simply have no bearing because the statutory requirement controls. Can an argument be made that when promulgating this regulation and that this regulation deals specifically with law enforcement and security and so when they were promulgating this regulation, they intentionally put the parentheses down because they wanted to show what's to distinguish elements versus exceptions? Your Honor, that argument could be made. If I recall correctly, there was some discussion of that in the review by the district court and I believe the district court adopted something similar to that understanding. However, in the statutory language, the parentheses don't appear and where the statute is inconsistent with the regulation, the statutory language must control. Well, the statute in the parentheses doesn't appear in the statute because what 901 is doing is just defining department property. So the parentheses, you know, the absence of parentheses seems completely understandable there but in 1.218, they're actually setting forth kind of what constitutes various violations that are enforceable or sanctionable and so it seems like the two provisions, one being the statute, the other being the regulation, really are directed towards two different things. Your Honor, to my understanding, if the Secretary of the VA is establishing the offenses as I understood you to indicate, he can only do that subject to the statutory requirement which is that the property must be under the control of the VA and not subject to the administrator of GSA. It creates that limitation that the property must be under the control. Now, once you get to what the regulation establishes which is to allow boisterous conduct, et cetera, et cetera, then the argument shifts a little bit as to what's meeting these criteria but for overall, does it happen at VA? The statute is clear that the property must be under control of VA and not subject to the control of the administrator of GSA. Does the GSA have a general disorderly conduct prohibition on property that it controls? Yes, Your Honor. I believe it is in 41 CFR and I believe it's somewhere in Part 100 but I would have to look at that and I am not sure to hopefully forestall the next question. I am not quite sure if the language there is exactly similar to what the VA's regulation is or not. Did you want to address your First Amendment argument? Thank you, Your Honor. On the First Amendment side, the Supreme Court spoke to this as I noted in the Notice of Supplemental Authority obliquely to this encounterment, Colorado of Encounterment. And in that case, the idea came about that... That's a threats case before we go too far down this rabbit hole. It's not a fighting words case. The whole argument that's being raised here is that this is not fighting words. So it's protected conduct and I think both the district court who reviewed the magistrate judge's decision and the government basically say that it doesn't really matter if this was protected conduct because it's regulable under the forum doctrine because this is a non-public forum. And Your Honor, we did address that in our briefing and the argument that we take there is that the VA itself opened the forum to expressive conduct and expressive speech. I listed some examples in my briefing. That's by no means as an exhaustive list but when the facility itself chooses to open itself up, it chooses to reduce the protection that exists to regulable speech. So your argument is that this is a limited public forum? You're not arguing this is a traditional public forum? No, Your Honor. At best, this would be... I believe this would be a limited public forum as the VA does maintain some control. But along that line, I would say that... even inside a... what I would ask this court to do is go opposite the other courts that have looked at this and to essentially say that veterans are not so broken that they need to have the full paternalistic protections that are afforded and that is what... and that is the key to most of the holdings that have addressed this regulation. And with the court's permission, I will reserve the remainder of my time for rebuttal. Thank you. Thank you, Your Honor. Ms. Tableson. May it please the court, Rebecca Tableson on behalf of the United States. Captain Cramble honorably served this country as a captain in the United States Air Force. He is therefore entitled to medical care at the VA. He does not, however, have the right to yell and swear at VA medical providers, to slam tables, to swear at and insult VA police, or to threaten a fight on VA grounds. 38 CFR Section 1.218 is a 50-year-old regulation that helps to ensure peace at VA medical centers. Those centers are not public fora of any type. Quite the opposite. They are designed to provide medical care to our nation's veterans in a private setting. And in a non-public forum like this one, the law tracks common sense, which is to say the government can limit access and speech with regulations that are reasonable given the purpose of the forum. As every court to consider this question has determined, the disorderly conduct restrictions in Section 1.218 are reasonable restrictions of conduct in a VA medical center. This case shows why conduct like Mr. Cramble's can and did disrupt the VA's provision of medical care to veterans. The First Amendment does not require the VA's other patients, employees, other veterans to simply tolerate that. I'll briefly discuss the second issue presented as well. As both the magistrate and district judge concluded, the evidence was more than sufficient to show VA control of the Humpner VA clinic in Green Bay. It is patrolled by VA officers, staffed by VA employees. The record is devoid of any suggestion that the GSA controls the clinic, and it does not. To briefly touch on Judge Lee's question about the parentheses in the regulation, the regulation is the basis for this conviction, is the regulation that provides the elements of this offense. So the parentheses there are significant. And ultimately, the parentheses in the regulation make clear what common sense would dictate here, which is that the lack of GSA control is an exception. As this court has noted, and this has been a long common law rule, it simply makes no sense for the government to affirmatively disprove this exception in cases where, as here, there is not even a suggestion that GSA control exists. If the court has no questions, we respectfully ask that you affirm the judgment. That interpretation of the statute creates no due process or the regulation, I should say, creates no due process problem of putting the burden on the defense for that exception? I don't think so, Your Honor. For the same reason, the typical sort of common law rule is that a true affirmative defense that doesn't negate one of the elements of the offense, but that sort of brings a different defense to the table. The burden of production is traditionally on the defendant. So that's something like duress, right? That doesn't negate the elements of the offense. Instead, it's a separate justification about why what you did wasn't criminal. The same thing can be said here, although it's much more prosaic, about the lack of GSA control here. The lack of GSA control doesn't negate any of the elements of the offense here. It's simply a sort of external issue that's otherwise orthogonal to the proceedings. If the defendant does think it's an issue, he can raise it and satisfy his burden of production. The government can still rebut it and carry its own burden of proof on that, but no, that does not create a due process problem. Basically, the phrasing of the statute clarifies that either one set of regulations control or the other for purposes of regulating this government property. Yes, precisely, Your Honor. It's almost like a jurisdictional threshold issue. But jurisdiction in the sense of which agency has control, not jurisdiction in the sense that the court has jurisdiction. Of course. We're all federal. Yes, absolutely. So I'm sorry. So it doesn't operate like a jurisdictional element in another myriad sections of the criminal code. Yes, absolutely. I just meant which agency's police force is governing what set of regulations are we under. I want to point out that Mr. Cromwell has never and still does not suggest that if this had been affirmatively raised before trial and proven as an element, it would have made a difference in his case. It would not have. There's no indication that the Green Bay VA is controlled by the GSA. It is not controlled by the GSA. So I think going to one of Chief Judge Sykes' questions to my friend, Mr. Lewis, we're talking, I think, about a little bit of gamesmanship here in terms of how this case was litigated rather than about the true merits of whether what happened here was appropriate. Are there government properties that are jointly controlled by the VA and GSA? I wish I could give you a really straight answer on that, Judge Lee, but here's what I've learned in this case. The Veterans Administration Building in Washington, D.C. is managed by the GSA. So I wish I could simply say, no, they're utterly mutually exclusive, but I cannot. What I can tell you is that a medical center like this one in Green Bay is entirely managed by the VA, and that's a different type of a building than the sort of Veterans Administration Building in Washington, D.C. So I guess I could understand procedurally how it would be managed in a different way by the government. If the Court has no further questions, we respectfully ask that you affirm the judgment below. Thank you, Your Honor. Thank you. Mr. Lewis, you had used all your time, but you may have an additional minute if you have anything further to say. Thank you, Your Honor. To go back to the last statement my friend made, Ms. Tableson, if the headquarters building is GSA-controlled, then obviously there are – well, I should say obviously – there are potential for other buildings to be GSA-controlled. Indeed, that seems to be a feature of government nowadays where ownership can be hotly contested or questioned. Along the lines of another statement that was made, there is a long and established history of Veterans being upset with the VA and the care and lack thereof provided by that agency. To get right down to it, the screaming, cursing, et cetera, that is not only protective speech, but it also illustrates the lack of care to which the nation through the VA gives its veterans. As such, in limited public forum, those statements and those expressions become protected. For those reasons, Your Honors, Captain Cranville asks that you reverse the conviction below and remand for any other proceedings that may become necessary on remand. Thank you, Your Honors. Thank you very much. Our thanks to both counsel. The case is taken under advisement.